UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**DECISION AND ORDER**
18-CR-171S

IBRAHIM A. DIRWEESH,

                Defendant.

## I. INTRODUCTION

On April 29, 2019, Defendant Ibrahim A. Dirweesh pleaded guilty to possessing child pornography involving a prepubescent minor, in violation of 18 U.S.C. §§ 2252A (a)(5)(B) and 2252A (b)(2). (Docket Nos. 26, 27.) Dirweesh faces a maximum sentence of 20 years' imprisonment, five-years-to-life of supervised release, and a fine of $250,000. His recommended guideline range, to which he does not object, is 63-78 months' imprisonment, five-years-to-life of supervised release, and a fine of $25,000-$250,000.[1] (Docket No. 28.) Sentencing was initially scheduled for August 7, 2019. (Docket No. 27.)

On July 25, 2019, Dirweesh filed a sentencing memorandum in which he requested the imposition of a downward variance to a sentence of time-served (now about 16 months). (Docket No. 31.) Upon review of Dirweesh's memorandum, this Court determined that an evidentiary hearing was required to assess the veracity of the circumstances that underlie Dirweesh's request. (Docket No. 34.) This Court

---

1 This is based on a Criminal History Category I and a Total Offense Level of 26. (Docket No. 28.)

conducted that hearing on September 23 and 30, 2019, hearing testimony from Special Agent Nicholas Melchiorre, Homeland Security Investigations; Aiad Elkhidir; Manon Jokaleu; and Dr. Michael E. Rudder, Ph.D. (Docket Nos. 44, 46, 47, 48.) At the conclusion of the hearing, this Court scheduled sentencing for October 30, 2019, which was subsequently adjourned to November 20, 2019, at 11:00 a.m. (Docket Nos. 46, 49.)

What follows are this Court's findings from the evidentiary hearing as it relates to Dirweesh's request for a downward variance. While this Court has not yet concluded what sentence would be fair, just, and reasonable, it does find that imposition of a sentence of less than 63 months is warranted based on the findings below and consideration of the factors set forth in 18 U.S.C. § 3553 (a). Dirweesh's request will therefore be granted. Counsel should be prepared to advocate at sentencing for whatever sentence below 63 months they deem warranted.

## II. BACKGROUND

### A. The Offense Conduct[2]

On August 22, 2018, Dirweesh attempted to enter the United States through the Peace Bridge Port of Entry in Buffalo, N.Y. He told the primary inspection officer that he was born in Sudan but was a United States citizen. He explained that he had been in Niagara Falls, Ontario, Canada, celebrating an Islamic holiday with his cousin. Upon further inspection, however, Dirweesh had difficulty explaining the ownership of the vehicle he was operating—it was a different cousin's vehicle, not his—resulting in the

---

2 The offense conduct is described in paragraphs 10-17 of the PreSentence Investigation Report. (Docket No. 28.)

officer referring him for secondary inspection.

Once in secondary inspection, the officers directed Dirweesh to remove all the belongings he had on his person and leave them on the counter. Among Dirweesh's possessions was an iPhone 7. In an attempt to explain the ownership of the vehicle, Dirweesh accessed his iPhone to show the officers a message from his cousin that proved that his cousin's name and the name of the vehicle owner matched. Dirweesh, however, could not find the particular message he was looking for in a long chain of messages, so officers obtained supervisor approval to manually inspect the device for Dirweesh's cousin's name themselves.

During the officers' inspection of the message chain that Dirweesh had been searching, they observed explicit videos of children performing sex acts on one another. Upon this discovery, the officers immediately ended the inspection and contacted the Department of Homeland Security Investigations ("HSI") to investigate further. HSI agents then conducted a border search of the iPhone and discovered two video files depicting child pornography. Subsequent forensic examination of the iPhone revealed multiple videos and images depicting child pornography, with some depicting prepubescent minors or minors less than 12 years of age.

### B. Dirweesh's Request for a Downward Variance

During a post-Miranda interview and subsequently, Dirweesh admitted to receiving the videos and images discovered on his iPhone but claimed that they were sent to him unsolicited from Sudan as a warning about the dire conditions there. Dirweesh also admitted to forwarding some of the material to his cousin via text message, also as a

warning. These same contentions are included in Dirweesh's request for a downward variance.

In his sentencing submissions, Dirweesh details the problems, issues, and current unrest in Sudan, including political corruption and the cruel and inhuman treatment of women and children. (Docket Nos. 31, 42.) He claims that this unrest causes individuals in Sudan to distribute mass warnings of the conditions there over programs that the Sudanese government cannot monitor, such as WhatsApp. Dirweesh explains that the child pornography discovered on his phone was sent to him, unsolicited, in this context by someone in Sudan as a warning to get his wife and children out of the country before they too are exploited.

Dirweesh maintains that he did not seek out these videos or images or derive any sexual gratification from them, and he denies any sexual attraction or interest in children. He also notes that he was examined by a psychologist, Dr. Rutter, who found that he does not have any sexual interest in children and does not pose a risk to children.

The government opposes Dirweesh's request for a downward variance and instead advocates for imposition of a sentence within the 63-78-month guideline range.

### III. DISCUSSION

**A. Hearing Testimony**[3]

**1. Nicholas Melchiorre, Special Agent, Homeland Security Investigations**

Special Agent Nicholas Melchiorre testified that he responded to the Peace Bridge

---

3 Except as may be noted herein, this Court finds each witness to be credible.

on August 22, 2018, to investigate the possible possession of child pornography by an individual attempting to enter the United States. (Transcript of the September 23, 2019 Hearing ("Vol. I"), Docket No. 47, pp. 19-21.) He and another agent (Agent Jacobson) interviewed Dirweesh about the material found on his iPhone. (Id. at p. 22.) Dirweesh told Melchiorre that he had received the material from an unknown individual through WhatsApp[4] and admitted forwarding some of the material to his cousin because he sent his cousin "crazy" things. (Id. at pp. 25, 26, 73.) He also told Melchiorre that he told his cousin to "watch these nasty things" and warned him to be careful because he has kids. (Id. at pp. 73-74, 77, 79, 83.) Melchiorre further testified that Dirweesh told him that he used WhatsApp to communicate because standard text messaging was unreliable and unaffordable for people in Sudan. (Id. at p. 75.) Dirweesh also denied ever having done anything inappropriate with a child. (Id. at pp. 77-78.)

After the interview, HSI conducted a forensic examination of Dirweesh's iPhone. Melchiorre testified that the forensic examination revealed that Dirweesh received the child pornography at issue from a single individual through WhatsApp in 2017. (Id. at pp. 27, 30-31, 33.) It was not received as part of a group chat or group message. (Transcript of the September 30, 2019 Hearing ("Vol. II"), Docket No. 48, p. 55.) This material was sent within an ongoing conversation in Arabic between Dirweesh and the unknown individual that took place over the course of approximately one year, between July 2017 and August 2018. (Id. at pp. 33, 37, 85.) And while investigators know that

---

4 Melchiorre explained that WhatsApp is an end-to-end encrypted phone application that allows for encrypted communications between two or more users. (Vol. I, p. 25.)

5

Dirweesh accessed the images and videos at least once, it cannot be determined how many times or how long they may have been viewed. (Id. at pp. 61, 83, 94, 95.) Investigators also do not know how many people the unknown individual sent these images and videos to, nor can they determine whether the unknown individual sent them from Sudan. (Id. at pp. 81, 82.) The results of the forensic examination also revealed that Dirweesh conducted no searches suggesting that he was seeking or interested in children or child pornography. (Id. at p. 86.)

The images and videos discovered on Dirweesh's iPhone were the only material containing child pornography among more than 20,000 images and videos on the phone. (Id. at pp. 72-73, 84.) Dirweesh did not respond when sent the videos and images, and in fact, Dirweesh provided few responses at all over the course of the year-long conversation with this unknown individual, sending just a few images of adult or undeterminable pornography in the beginning in July 2017. (Id. at pp. 84-85, 94.)

Dirweesh received three child pornography videos in July 2017. (Id. at p. 27.) The first video depicts a dark-skinned girl performing a sex act on a dark-skinned boy on a bed. (Id. at p. 41.) The second video depicts a light-skinned boy and a light-skinned girl, each between the ages of six and ten, engaged in sex on a bed. (Id. at p. 42.) The third video depicts a boy and a girl, each between one and three years old, engaged in vaginal sex outdoors in a field or on soil.[5] (Id. at p. 46.)

Melchiorre made several points about these videos. First, he could not determine

---

5 These three videos are further described in the PreSentence Investigation Report at paragraphs 14 and 16.

where the videos were filmed. (Id. at pp. 41-42, 43.) Second, there is no indication that the videos were filmed in Sudan. (Id. at pp. 42, 43, 83.) Third, the ethnicity of the children appearing in the videos and image could not be determined with certainty. (Id. at pp. 43, 83.) Finally, the videos were unaccompanied by any text messages or warnings. (Id. at pp. 44, 45, 47.)

Melchiorre further testified that Dirweesh received an image of child pornography in September 2017. (Id. at pp. 48, 49.) This image is of a medium-skinned boy between two and five years old dressed in traditional Middle Eastern attire, seated in a chair with his penis and testicles exposed to the camera. (Id. at p. 49.) The image has a text overlay that translated from Arabic to English states: "He focused so much on his character that he completely neglected the bottom foundations." (Id. at 50.) The translator construed this text overlay as a joke.[6] (Id.)

Melchiorre testified that the videos and the image were sent to Dirweesh during the course of an ongoing WhatsApp conversation.[7] (Id. at p. 51.) The general nature of the conversation was "jokes and videos." (Id.) Some of the videos were religious, some were adult pornography. (Id. at pp. 37, 51.) There were also pictures and videos of assaults and tortures. (Id. at p. 52.)

The assault and torture material consisted of an image of a dismembered female

---

6 This image is further described in paragraph 16 of the PreSentence Investigation Report.

7 Melchiorre testified about additional videos and images discovered on Dirweesh's phone as well. (See Volume I, pp. 44 (video of light skinned male and female, each approximately one to three years old, with female dressed as a doctor or nurse appearing to put an injection into the buttocks of the male); 57-58 (image of light-skinned, naked boy with buttocks exposed taking picture of four other children), 58-59 (video of medium-skinned female between 13 and 18 years of age stripping), and 60 (video of an infant's buttocks made to look like a woman's breasts in a bra).

body and a video of a man being dragged out of a building and murdered by a group of people with swords. (Id. at pp. 52, 88.) These materials were accompanied by text warnings—the images of the dismembered female were preceded by a message about a female that had gone missing in Sudan; the video of the assault on the man was preceded by a warning from the Sudanese embassy about an assault that had taken place. (Id. at p. 52.) There were also pictures of hangings, beheadings, disembowelments, and beatings of adults and children. (Id. at pp. 88-93.)

Melchiorre also testified that Dirweesh transmitted child pornography from his phone. (Id. at p. 52.) Examination of the iPhone revealed that Dirweesh texted child pornography via standard texting (not through WhatsApp) to an individual in January 2018. (Id. at p. 53.) This occurred in the context of an ongoing text message chain in English. (Id.) Dirweesh sent the video of the two children engaged in sex outdoors and the first video of the two children engaged in sex acts on a bed. (Id. at pp. 55, 56.) The two videos were sent at the same time. (Id. at p. 56.) Neither video was accompanied by any text message or warning. (Id.) Immediately following his transmission of these two videos, Dirweesh sent a video of adult pornography. (Id.) No other transmissions of child pornography were found on Dirweesh's phone. (Id. at p. 75.)

### 2. Manon Jokaleu, Community Organizer

Manon Jokaleu is a community organizer who was born in Sudan and emigrated to the United States in 2000. (Vol. I, p. 99-100.) He is now an elder in the local Sudanese community. (Id. at p. 100.) He does not know Dirweesh. (Id. at p. 99.)

Jokaleu testified about the history of Sudan, the outbreak of wars there, and the

8

current conditions.  (Id. at p. 101.)  He testified that Sudan is currently governed by a military, Islamic regime that abuses human rights.  (Id.)  He stated that there is no freedom of speech in Sudan, and that there is rampant genocide, violence, and exploitation of women and children.  (Id. at pp. 101-103, 106, 114.)

Jokaleu also testified that the Sudanese government monitors all electronic communication in the country.  (Id. at pp. 106-107.)  The only unmonitored or "safe" method of communication is through WhatsApp, which is used by many Sudanese people, particularly to discuss political or sensitive issues.  (Id. at pp. 100, 107, 109-110.) According to Jokaleu, people in the Sudan "share a lot," especially in social media groups, like a WhatsApp group.  (Id. at p. 107.)  People share images and videos, and those images and videos often depict the horrific, brutal conditions in Sudan, such as killings, torture, abuse, and sexual exploitation of children.  (Id. at pp. 107-108.)  These messages are shared to raise awareness of the conditions in Sudan with the hope that the international community will recognize the atrocities and act to end them.  (Id. at pp. 108, 109, 111-112.)

Jokaleu himself uses WhatsApp and has randomly received, unsolicited, the type of material found on Dirweesh's phone involving both atrocities and child pornography, which Jokaleu immediately deletes.  (Id. at pp. 108, 115-116, 117, 119, 121.)  By way of example, in a 48-hour period, Jokaleu may receive 100-150 messages in a WhatsApp group, and he has personally received pictures of children being sexually exploited from individuals that he does not know.  (Id. at pp. 109, 110.)  When shown pictures of the human rights abuses described above, Jokaleu testified that those are the types of

9

pictures and videos being widely shared over WhatsApp to raise awareness. (Id. at pp. 111-112.) He conceded on cross-examination, however, that the pictures and videos he was shown do not necessarily show Sudanese children and were not necessarily taken in Sudan, but he explained that the pictures and videos nonetheless raise awareness of the plight of children because similar conditions exist in Sudan. (Id. at pp. 117-119.)

### 3. Aiad Elkhidir, Dirweesh's Cousin

Aiad Elkhidir is Dirweesh's cousin. (Vol. I, p. 124.) He is from Northern Sudan and emigrated to the United States in 1999 to escape civil war. (Id.) He testified that Dirweesh met him in Canada on August 22, 2018, to celebrate a religious holiday. (Id. at pp. 124-125.) He described his relationship with Dirweesh as "close cousins" and indicated that Dirweesh lived with him in New Jersey and Indiana at times. (Id. at pp. 126, 131.)

Elkhidir relayed that his wife, Aisha, was denied asylum in the United States and faced deportation to Sudan. (Id. at pp. 126-127.) Elkhidir testified that he discussed the possibility of Aisha having to return to Sudan with Dirweesh, who told him that it was unsafe in Sudan. (Id. at pp. 127-128.) Dirweesh told Elkhidir that he had received horrible videos and pictures on WhatsApp that showed how bad it was in Sudan, including two bad videos. (Id. at pp. 128, 133.) Elkhidir did not, however, ever receive any pictures from Dirweesh, nor does he know whether Dirweesh attempted to send him any. (Id. at pp. 128-129, 133.)

### 4. Dr. Michael Rutter, Ph.D., Licensed Psychologist

Dr. Michael Rutter is a licensed psychologist and professor at Canisius College in

Buffalo, N.Y. (Vol. II, pp. 1-2.) In addition to serving as director of the Canisius College clinical-mental-health-counseling program, Dr. Rutter maintains a private practice in which he conducts psychological evaluations and performs other forensic work, specifically with sex offenders and individuals charged with distributing or possessing child pornography. (Id. at p. 2.)

Dr. Rutter conducted a clinical psychological interview and evaluation of Dirweesh in December 2018.[8] (Id. at pp. 9, 10, 48.) Based on the circumstances of the offense and the results of the clinical interview and diagnostic tests, Dr. Rutter opines that Dirweesh's offense was not sexual in nature. (Id. at p. 16.) First, Dr. Rutter found no evidence of any psychological disorders. (Id. at p. 14.) Second, Dr. Rutter found no signs of sexually aberrant behavior or interests. (Id. at p. 16.) Third, Dr. Rutter found that Dirweesh did not engage in any behaviors typical of an individual with a sexual interest in children, such as "stockpiling" large volumes of child pornography, searching for child pornography to collect or trade, or organizing child pornography into files. (Id. at pp. 14-16.) Of note, Dr. Rutter testified that in assessing over 100 sex offenders, he had never encountered so few videos and images, a circumstance that he described as "exceedingly rare." (Id. at pp. 7, 14, 15.)

Dr. Rutter made other findings as well. He found no evidence of any psychological disorders or impulse control problems. (Id. at pp. 14, 16.) He further found that Dirweesh is not a danger to children, does not have a sexual interest in

---

[8] In addition to Dr. Rutter's hearing testimony, this Court has also thoroughly reviewed and considered Dr. Rutter's written report, which is contained in the record at Docket No. 31, pp. 43-51.

11

children, and did not possess the videos and images of child pornography for any kind of sexual gratification. (Id. at p. 41.)

Dr. Rutter also addressed Dirweesh's transmission of the child pornography. (Id. at p. 18.) He explained that due to his traumatic childhood experiences in Sudan, Dirweesh's possession of the material is part of an extensive and horrifying trauma narrative. (Id. at p. 18.) The images elicit a "visceral response" in Dirweesh because of what is happening in the Sudan and are part of a shared experience with other Sudanese, which is why he would forward them to his cousin to dissuade him from relocating his family to Sudan. (Id. at pp. 11, 18-19, 31.) Dr. Rutter believes that Dirweesh interpreted and used the videos and image as a warning. (Id. at p. 49.)

Dr. Rutter ultimately diagnosed Dirweesh with no disorder and believes that a non-incarceration probationary sentence would be appropriate. (Id. at pp. 13, 20, 32.)

**B. Law and Findings**

The United States Supreme Court succinctly set forth a sentencing judge's task in Gall v. United States:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553 (a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the

12

> deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

552 U.S. 38, 49-50, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) (citations omitted).

Here, the parties agree, and this Court finds, that the applicable guidelines range is 63-78 months. This Court directed the hearing described above to assess the § 3553 (a) factors, particularly the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553 (a)(1). While this Court will not finally determine a fair, just, and reasonable sentence before hearing from the parties in open court at sentencing, see Rule 32 (i) of the Federal Rules of Criminal Procedure, it finds from the parties' submissions and the evidence adduced at the hearing that a downward variance is warranted.

As it relates to the nature and circumstances of the offense, this Court largely accepts Dirweesh's explanation of the circumstances under which he came to possess the child pornography. There is no dispute that conditions in Sudan constitute a human rights crisis and that atrocities occur there all too regularly. There is also no dispute that many Sudanese use WhatsApp to communicate because it provides an inexpensive, secure mode of transmitting information. It is also uncontroverted, as explained by Jokaleu, that many Sudanese use WhatsApp to raise awareness of conditions in the Sudan by sending images and videos of the atrocities there, whether of Sudanese children or not.

13

Given his upbringing in Sudan and lack of sexual interest in children, Dirweesh's possession of the child pornography at issue largely fits this narrative. This Court is convinced that Dirweesh did not seek out this material or possess it in a way that suggests typical sex-offender behavior (e.g., cataloguing, creating files, trading). Dirweesh received the material unsolicited, and while it is true that he did not delete it, there is also no evidence that he accessed it more than once or transmitted it beyond what he sent to his cousin. To be sure, this Court is troubled that Dirweesh kept the material and transmitted it, but it is satisfied that he did not do so as a typical purveyor of child pornography.

The weight of the evidence suggests that Dirweesh construed the videos and images he received to be warnings concerning the conditions in Sudan as opposed to sexually gratifying materials. First, Dirweesh explained to Melchiorre from the outset that he believed the material to be a warning sent from someone in Sudan, and he forthrightly admitted to sending it to his cousin in the same vein. Second, Dirweesh did not respond to these transmissions, nor did he send any child pornography materials back to the sender. Third, this same unknown sender sent Dirweesh pictures and videos of other atrocities in Sudan, including beheadings, murders, dismemberment, beatings, and the like. Fourth, there were few videos and images that constitute child pornography received among the numerous videos and images of atrocities.

Again, however, this Court is troubled that Dirweesh received this material from a single individual in a non-group message that lasted over one year, suggesting that Dirweesh knew the sender. It is also concerning that Dirweesh did not cut off

14

communication with the sender once the child pornography was received in July 2017, but instead, continued to communicate with this individual through August 2018, sometimes sending adult or indeterminable pornography. And too, the inclusion of jokes in some of the materials weighs against the claim that the images were sent as warnings.

This Court also struggles with Dirweesh's transmission of the images to his cousin, but again, given Dirweesh's background in Sudan, the current conditions in Sudan, and Dirweesh's lack of interest in children, it is reasonable to accept that he transmitted the images as a warning. Elkhidir testified that when his wife faced removal from the United States to Sudan, Dirweesh warned him that it was unsafe there and cited "two bad videos" among the horrible pictures and videos he had received on WhatsApp. While Elkhidir stated that Dirweesh never sent him the photos, it is not a leap to believe that Dirweesh would have warned his other cousin the same way about relocating to Sudan. But Dirweesh also sent his cousin adult pornography in quick succession, and no warnings about the conditions in Sudan accompanied the child pornography, which are two facts that call into question Dirweesh's intent.

As it relates to the history and characteristics of the defendant, the government submitted no evidence to rebut Dr. Rutter's findings that Dirweesh does not suffer from any psychological disorders, does not hold sexually aberrant interests, does not have a sexual interest in children, does not experience sexual gratification from child pornography, and does not pose a danger to any child. Thus, this Court again finds that Dirweesh is not a typical child-pornography defendant.

## IV. CONCLUSION

To be clear, Dirweesh stands convicted of a serious offense that requires serious punishment. There is no dispute that the videos and images he possessed constitute illegal child pornography. The purpose of the hearing was to explore the nature and circumstances of the offense and Dirweesh's history and characteristics. As explained above, this Court finds that both of those factors warrant a downward variance from the 63-78-month guideline range.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's request for a downward variance is GRANTED.

FURTHER, that counsel should be prepared to advocate at sentencing for whatever sentence below 63 months they deem warranted.

SO ORDERED.


Dated: November 15, 2019
       Buffalo, New York

                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge